FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ JUN 2 2005 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
JOHN GIBSON,

                Plaintiff,

-against-

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.
------------------------------------------------X

MEMORANDUM
& ORDER

04 CV 3646 (SLT) (MG)

TOWNES, U.S.D.J.

Plaintiff seeks review of the Social Security Commissioner's denial of his claims for Supplemental Security Income ("SSI"). The Commissioner has moved for judgment on the pleadings affirming the denial of benefits. Plaintiff has cross-moved for an award of benefits or, in the alternative, for a remand for further proceedings. Based on the written submissions of the parties and oral argument held on July 15, 2005, and for the reasons set forth below, the Commissioner's motion is DENIED and the case is remanded to the Social Security Administration ("SSA") for further proceedings consistent with this opinion.

I.     Facts and Procedural History

John Gibson ("Plaintiff") filed an application for SSI benefits on May 3, 2002, claiming that he had been disabled since 1993 due to hypertension and other heart-related problems. (Transcript ("Tr.") 45-48.) Plaintiff's claim was denied on July 19, 2002. (Tr. 24-27.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") for a review of his existing claim for disability as well as additional claims based on injuries to his knees and spine. (Tr. 28-

30, 83-85, 137.) ALJ Newton Greenberg denied Plaintiff's claim for benefits on July 7, 2003 after a hearing. (Tr. 18-22.) Plaintiff was the only witness to give testimony at the hearing. (Tr. 170-86.) Plaintiff appealed the ALJ's decision to the Appeals Council on the grounds of legal error and lack of substantial evidence to support the denial of benefits. (Tr. 13, 166-68.) Plaintiff also submitted additional evidence to the Appeals Council regarding his claim that he suffers from carpal tunnel syndrome. (Tr. 163-65, 167.) The Appeals Council denied Plaintiff's request for review on June 25, 2004, making the ALJ's decision the final decision of the Commissioner. (Tr. 6.) Plaintiff then filed this action requesting review of the ALJ's decision.

Plaintiff was born on July 5, 1955 and was 46 years old at the time he filed for SSI benefits. (Tr. 46.) Plaintiff earned a high school equivalency diploma and has previously been employed as a file clerk, sales clerk, tape librarian, and most recently, as a medical biller. (Tr. 58.) After Plaintiff lost his job as a medical biller in March 1996, he remained home to care for his ill father and did not seek further employment. (Tr. 174.)

A. Medical Evidence Submitted to the ALJ

Plaintiff was admitted to the hospital on January 26, 2001 with complaints of chest pain and elevated blood pressure. (Tr. 95.) Immediately following his discharge, Plaintiff went to see Dr. Jeffrey Sosinsky for follow-up care relating to his hypertension and chest pain. (Tr. 113.) In March 2002, Plaintiff was examined by Dr. Oksana Aron, a specialist in internal medicine. (Tr. 90-91.) After a largely unremarkable examination, Dr. Aron found that Plaintiff suffered from uncontrolled hypertension and had an abnormal EKG, but nonetheless opined that he was capable of performing light work and could walk, sit, stand, hear and speak. (Tr. 91.)

After examining Plaintiff several times since February 2001, Dr. Sosinsky issued a report

dated May 30, 2002, in which he diagnosed Plaintiff with hypertension, which was difficult to control, insomnia, atypical chest pain, and back pain syndrome. (Tr. 113-14.) Dr. Sosinsky further found that, in light of his impairments, Plaintiff was capable of carrying up to five pounds occasionally, standing and/or walking up to two hours a day, had no limitation in sitting, pushing or pulling, and had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 115-16.)

After reviewing the medical reports of Drs. Aron and Sosinsky, but without examining Plaintiff, Dr. Mohammad Husain submitted a report to the Department of Social Services on July 10, 2002, in which he opined that Plaintiff had "poor control" over his elevated blood pressure but could still lift or carry up to twenty pounds occasionally and up to ten pounds frequently, stand or walk for six to eight hours a day, and sit for six to eight hours a day. (Tr. 120-22.)

Nearly a year after his first report, Dr. Sosinsky issued a report on March 19, 2003, in which he added to his diagnosis of hypertension a further impairment caused by a meniscal tear and osteoarthritis of the left knee, as shown by an MRI taken on July 31, 2002. (Tr. 133.) Dr. Sosinsky noted that Plaintiff's knee injury had been treated with non-steroidal medications, which were not effective, and that an orthopedic surgeon recommended surgery for the knee injury, though the surgeon was "not assured of any results" from the surgery. (*Id.*) Dr. Sosinsky stated that Plaintiff walks with a cane and could walk one block without resting. (*Id.*) Dr. Sosinsky further concluded that though Plaintiff can lift several pounds, he "is unable to bend down and experiences pain on prolonged sitting." (*Id.*)

In a follow-up report dated April 15, 2003, Dr. Sosinsky noted that Plaintiff's hypertension had been brought under control by use of the medication Hyzar but that MRIs showed soft tissue derangement in both knees and that knee surgery was scheduled. (Tr. 155,

158.) In the same report, Dr. Sosinsky cited the results of a March 30, 2003 CT scan of the cervical spine, which showed foraminal narrowing and annular disc bulges resulting in compression of the thecal sacs. (Tr. 157, citing MRI at Tr. 144-45.)

    B.    Hearing Testimony

At the administrative hearing held on May 28, 2003, Plaintiff testified that after he lost his job as a medical biller in 1996 he stayed home to take care of his ailing father and did not try to seek further employment. (Tr. 175.) When asked by the ALJ why he could not work at a sedentary job, Plaintiff stated that he would get pain in his knees and his hip which made prolonged sitting painful and that moving his neck resulted in "unbearable" pain. (176-77.) When the ALJ asked Plaintiff again later in his testimony if he could hold down a sedentary-type job, Plaintiff responded that it was possible if he did not have to stand for too long. (Tr. 178.) The ALJ noted that Plaintiff weighed roughly 270 pounds and was approximately 5'7" or 5'8" and began to question him about his obesity, but stopped after stating "that doesn't seem in itself a disabling condition." (*Id.*) Plaintiff testified that he was able to take public transportation if he had the money but that he usually had a friend drive him to doctors' appointments. (Tr. 179.)

In response to questions from his attorney, Plaintiff testified that beginning in November 2001, he began experiencing bad headaches and pain in his neck that was so severe it "felt like somebody had my neck in a pair [of] pliers and was squeezing." (Tr. 183.) Plaintiff further testified that on Dr. Sosinsky's suggestion he had visited a neurosurgeon regarding his MRI results, which had shown bulges in his cervical discs, and that the neurosurgeon had stated that neck surgery might be an option. (*Id.*) Following up his earlier testimony regarding his ability to take public transportation, Plaintiff stated that due to his neck pain it was very painful to take the

bus, as going over a bump "felt like somebody tried to break my neck." (Tr. 184.) Plaintiff also reiterated that his knee gives out two to four times a day and that as a result he has fallen on more than one occasion. (*Id.*) Finally, Plaintiff briefly mentioned that Dr. Sosinsky had diagnosed him with carpal tunnel syndrome. (Tr. 183.)

Also during the hearing, Plaintiff's counsel noted that he was amending his application to one solely for SSI benefits under Title XVIII, eliminating the claim for disability insurance benefits under Title II. (Tr. 179-81.) Plaintiff's attorney further conceded that there was insufficient evidence to support a disability onset date prior to 2001. (Tr. 179.)

C. Additional Evidence Submitted to Appeals Council

On his appeal from the ALJ's decision denying benefits, Plaintiff submitted a report issued by Dr. Suying L. Song, which noted that "signs of mild to moderate right greater than left median nerve entrapment at the carpal tunnel" was "indicative of carpal tunnel syndrome in light of [Plaintiff's] symptoms of the hands." (Tr. 163-65.) The report is undated, though Plaintiff's counsel avers that it was issued on June 24, 2003. (Tr. 167.)

II. Discussion

A. Scope of Review

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Thus, if the Commissioner's decision is supported by substantial evidence and

there are no other legal or procedural deficiencies, her decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla[;] [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of other evidence in the record that might detract from such a finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." *Rivera v. Sullivan*, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991).

Nonetheless, the "substantial evidence" test applies only to the Commissioner's <u>factual</u> determinations; similar deference is not accorded to the Commissioner's legal conclusions or to the agency's compliance with applicable procedures mandated by statute or regulation. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("This deferential ["substantial evidence"] standard of review is inapplicable, however, to the [Commissioner's] conclusions of law."). Accordingly, the Commissioner's legal conclusions and compliance with applicable regulatory and statutory mandates are reviewed <u>de novo</u>.

B.  Disability Determination

In order to qualify for SSI benefits, a claimant must be deemed "disabled" as that term is defined in 42 U.S.C. § 1382c. A person is "disabled" when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A). A

"physical or mental impairment" consists of "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 1382c(a)(3)(D). An individual shall be determined to be under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382c(a)(3)(B).

The Commissioner determines whether a claimant meets the statutory definition of "disabled" in five successive steps. *See* 20 C.F.R. § 416.920 (1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). These steps may be summarized as follows:

> (1) Is the claimant gainfully employed? If she is, then she is not disabled. If she is not, then the analysis proceeds to the second step.
>
> (2) Does the claimant have a "severe" impairment(s) – i.e., one that significantly limits her physical or mental ability to do basic work activities? If she does not, then she is not disabled. If she does, then the analysis proceeds to the third step.
>
> (3) Does the claimant's impairment(s) meet or equal a "listed impairment?" If it does not, then the analysis proceeds to the fourth step. If it does, then she is disabled.
>
> (4) Does the claimant's impairment(s) prevent her from doing her "past relevant work?" If it does not, then she is not disabled. If it does, then the analysis proceeds to the fifth and final step.
>
> (5) Does the claimant's impairment(s), considered in conjunction with her residual functional capacity, age, education, and past work experience, prevent her from engaging in other substantial gainful work reasonably available in the national economy? If it does not, then she is not disabled. If it does, then she is disabled.

*Id.* The burden of proving disability is on the claimant for the first four steps of this analysis.

*Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). However, "once the claimant has established a prima facie case that his impairment prevents his return to his prior employment, it then becomes incumbent on the [Commissioner] to show that there exists alternative substantial gainful work in the national economy which the claimant could perform, considering his physical capability, age, education, experience and training." *Id.*

In weighing the medical opinion evidence, the ALJ is obligated to adhere to the rules set forth in 20 C.F.R. § 416.927(d). These rules indicate that, generally, more weight is given to the following: (1) opinions provided by physicians who have actually examined a claimant; (2) opinions provided by a claimant's treating physicians; (3) opinions supported by objective relevant evidence; (4) opinions that are more consistent with the record evidence as a whole; (5) opinions of specialists about medical impairments related to their area of expertise; (6) opinions that may be supported by any other factors the claimant brings to the Commissioner's attention. *Id.* at § 416.927(d)(1) - (6). However, the Commissioner must give a treating physician's opinion "controlling weight" if his or her opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* at § 416.927(d)(2). Nonetheless, certain ultimate conclusions remain the exclusive province of the Commissioner. These include the ultimate determinations of whether a claimant is disabled, whether a claimant's impairment(s) meets or equals a "listed impairment," a claimant's Residual Functional Capacity ("RFC"), and the final assessment of vocational factors in relation to the claimant's impairments. *Id.* at §§ 416.927(e)(1) - (2).

C.  The ALJ's Determination

In performing his analysis, the ALJ found that Plaintiff had not performed substantial gainful employment since filing for SSI benefits, satisfying step one. (Tr. 19, 21.) The ALJ found that Plaintiff suffered from the severe impairments of hypertension and soft tissue derangement of the bilateral knees, satisfying step two, but that such impairments did not qualify for any listing in Appendix 1 to subpart P of Regulation No. 4. (*Id.*) The ALJ then made a determination as to Plaintiff's RFC, finding that he was capable of performing sedentary work requiring him to sit for six hours, stand for two hours, and lift up to ten pounds. (*Id.*) At step four of the analysis, the ALJ concluded that Plaintiff's past relevant work as a medical biller qualified as sedentary work and that Plaintiff could return to his prior position. (*Id.*) The ALJ therefore concluded that Plaintiff was not disabled. (*Id.*)

Plaintiff argues that the ALJ misapplied the treating physician rule and further that the denial of benefits was not supported by substantial evidence because the ALJ failed to give proper weight to the evidence in the record supporting Plaintiff's disability claims. These arguments are addressed in turn below.

1.  Treating Physician Rule

An ALJ is required to give controlling weight to a treating physician's opinion as to the "nature and severity of [the claimant's] impairment(s)," provided that it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)).

There is no dispute that Dr. Sosinsky was Plaintiff's treating physician for the entire period now under consideration. Thus, his assessment of Plaintiff's impairments was entitled to controlling weight by the ALJ unless it was not based on acceptable medical techniques or was contradicted by other substantial evidence in the record. While the ALJ did not expressly state how much weight he gave to Dr. Sosinsky's medical opinions, it is difficult to conclude that he accorded them controlling weight when he disregarded several of Dr. Sosinsky's findings. The ALJ concluded that Plaintiff was capable of sedentary work because he could "sit for 6 hours, stand for 2 hours and lift up to 10 pounds." (Tr. 21.) However, in his May 20, 2002 report, Dr. Sosinsky stated that while Plaintiff could stand or walk for up to two hours and was not limited in his ability to sit, he could only carry up to <u>five</u> pounds "occasionally," defined as "up to 1/3 of a work day." (Tr. 115.) The Government argues that there is no inconsistency between an ability to lift up to five pounds occasionally and an ability to lift up to ten pounds, or in the alternative that an ability to lift any amount of weight under ten pounds satisfies the requirements for an RFC of sedentary work. These arguments are unavailing. It cannot be the case that the requirement that a claimant be able to lift "no more than ten pounds at a time" in order to retain the RFC for sedentary work (*see* 20 C.F.R. § 404.1567(a)) constitutes a ceiling satisfied by an ability to lift anything less, as that would cover a claimant who could not lift any weight and would in essence eliminate any distinction between the categories of "sedentary work" and "disabled."

Further, in a more recent medical report dated March 19, 2003, Dr. Sosinsky found that an MRI showed a meniscal tear and osteoarthritis in Plaintiff's left knee and stated that "the patient walks with a cane and can walk one block without resting. He can lift several pounds. *He is unable to bend down and experiences pain on prolonged sitting.*" (Tr. 133, emphasis

added.) The ALJ cited this opinion, but he omitted the italicized language, which clearly represents an important finding that should have been considered by the ALJ in determining Plaintiff's RFC. If the ALJ had accorded this finding controlling weight, he would have been unable to find that Plaintiff was capable of returning to his prior position as a medical biller, as Plaintiff stated that the job required him to sit for four hours a day and to stoop and kneel for one hour each. (Tr. 77.) Finally, the ALJ did not address how Dr. Sosinsky's findings in his March 2003 report modified or superceded his conclusions from a year earlier, prior to the MRI showing the knee injury, that Plaintiff could sit for six hours, stand or walk for two hours, and lift up to five pounds occasionally.[1]

The Government argues that the statements cited above from Dr. Sosinsky's March 2003 report were not medical opinions entitled to controlling weight but were instead Plaintiff's assessment of his own abilities, due to the fact that they were included in the section of the report entitled "History." However, in the next section of the report, entitled "Physical Findings," Dr. Sosinsky wrote "as described in previous question" and nothing else. (Tr. 133.) It was clearly Dr. Sosinsky's intention that these statements be taken as his findings, and that is how this Court will interpret them. Thus, they were entitled to the same weight as Dr. Sosinsky's prior conclusions.

The ALJ was not required to give Dr. Sosinsky's medical opinions controlling weight if he found that they were not supported by medically acceptable diagnostic techniques or that they were contradicted by other substantial evidence in the record. The ALJ made no such findings. Furthermore, even if the ALJ had found that Dr. Sosinsky's opinions were contradicted

---

[1] The Government again argues with respect to this report that because "several pounds" is reasonably construed as meaning less than ten pounds that Plaintiff continues to meet the RFC requirements for sedentary work. As has already been discussed, this argument is unpersuasive.

by other substantial evidence in the record, such as by the medical opinions of the non-treating physicians, he still would have had to determine how much weight to give to Dr. Sosinsky's opinions based on the following factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *Dyckoff v. Barnhart*, 2004 U.S. Dist. LEXIS 8396, at *18 (S.D.N.Y. May 14, 2004) (holding that an ALJ "must consider" these factors in determining the weight to be given to a treating physician's opinion); *Torresgrosa v. Barnhart*, 2004 U.S. Dist. LEXIS 16988, at *15 (E.D.N.Y. Apr. 27, 2004) (Block, J.) ("If the treating physician's opinion is not given controlling weight, the weight to be accorded the opinion is based on [the] five [*Halloran*] factors."). The ALJ did not mention nor apply these factors to determine the proper weight to be given to Dr. Sosinsky's opinions.

An ALJ's failure to apply these factors requires remand unless the Court can ensure after reviewing the record that the ALJ followed the substance of the treating physician rule by providing "good reasons" for the weight given to the physician's opinion. *Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); *Dyckoff,* 2004 U.S. Dist. LEXIS 8396, at *18 ("If an ALJ fails to discuss the weight accorded a treating physician's opinion, a court must undertake a searching review of the record to ensure that the substance of the rule was followed."); *Beckles v.*

*Barnhart*, 340 F. Supp. 2d 285, 289 (E.D.N.Y. 2004) (Feuerstein, J.) (noting that an ALJ's decision "must explain the weight given to the treating physician's opinion"). The ALJ in this case gave no indication of the weight he accorded Dr. Sosinsky's opinions, nor did he provide "good reasons" for disregarding certain of Dr. Sosinsky's findings. From the remainder of his decision, it is clear that the ALJ believed that Plaintiff's knee problems would be alleviated by future surgery, as he noted that he was "mindful that the claimant's treating source stated in April 2003 that claimant was scheduled for surgery of the knees." (Tr. 20). In the absence of any evidence in the record that the surgery ever took place or any medical opinion indicating that the surgery would have repaired the damage to the knees[2] and put an end to Plaintiff's symptoms (Dr. Sosinsky noted that the orthopedic surgeon scheduled to operate on Plaintiff was "not assured of any results from [the surgery]" (Tr. 133.)), the ALJ's unsubstantiated belief on this point does not constitute a "good reason" for discounting the treating physician's findings regarding the knee injury. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (holding that an ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion" or fail to "cite to any medical opinion to dispute the treating physicians' conclusions"). The ALJ's failure to properly apply the treating physician rule necessitates a remand in this case.

    2.    Evidence in Support of Plaintiff's Disability Claims

Plaintiff argues that the ALJ's determination cannot be considered to be supported by

---

[2] In addition to the meniscal tear to the left knee noted by Dr. Sosinsky in his March 2003 report, he also found in a report dated April 15, 2003, that an MRI showed "severe soft tissue derangements in both knees." (Tr. 155.)

substantial evidence because he failed to give proper weight to Plaintiff's subjective complaints regarding his knee injuries and cervical spine condition and failed to even consider the evidence regarding obesity and carpal tunnel syndrome.

a. Plaintiff's Subjective Complaints of Pain

In finding that Plaintiff could engage in a full range of sedentary work and could return to his prior employment as a medical biller, the ALJ found that Plaintiff's subjective complaints of pain as a result of his knee and back injuries were not fully credible. (Tr. 20, 21.) At the hearing, Plaintiff testified that sitting for too long causes him pain in his knees and hip and that his knee gives out without warning up to four times a day, making it difficult to walk and causing him to fall on occasion. (Tr. 177, 84). Plaintiff further testified that he cannot move his neck and that any attempt to do so causes him "unbearable pain." (Tr. 177.) In response to questions from his attorney, Plaintiff stated that sometime in 2001 he began experiencing headaches and neck pain that felt like "somebody had my neck in a pair of pliers and was squeezing" and said that taking public transportation was very difficult because going over a bump "felt like somebody tried to break my neck." (Tr. 183-84.) However, when the ALJ asked Plaintiff if he could perform a sedentary-type job, Plaintiff answered that it was possible if he did not have to stand for too long. (Tr. 178.)

Social Security regulations describe a two-step process by which an ALJ is to evaluate a plaintiff's report of subjective symptoms. First, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms." Social

Security Ruling ("SSR") 96-7p, 61 Fed. Reg. 34483, at *34484-85 (1996); *see also* 20 C.F.R. § 416.929(b); *Vasquez v. Barnhart*, 2004 U.S. Dist. LEXIS 5606, at *30-31 (E.D.N.Y. Mar. 2, 2004) (Ross, J.). Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p; *Vasquez*, 2004 U.S. Dist. LEXIS 5606, at *31. In making this evaluation of Plaintiff's credibility, the ALJ "must consider" the following factors, in addition to the objective medical evidence: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p; *Vasquez*, 2004 U.S. Dist. LEXIS 5606, at *31-32.

The ALJ appears to have addressed only two of the seven factors listed above, and only one of them in any depth. With respect to the first factor, The ALJ relied on Plaintiff's testimony that he took care of his father, who had suffered a stroke, after he was terminated from his employment in 1996 and that he was capable of performing his household chores and did not need help with the activities of daily living in dismissing Plaintiff's subjective complaints of disabling pain from his knee injury and back pain. (Tr. 20, 21.) However, "a finding that a

claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant 'engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.'" *Vasquez*, 2004 U.S. Dist. LEXIS 5606, at *33 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983)); *Balsamo*, 142 F.2d at 81 ("A claimant need not be an invalid to be found disabled under the Social Security Act.") (internal quotation marks and citation omitted); *Sarchese v. Barnhart*, 2002 U.S. Dist. LEXIS 13700, at *26 (E.D.N.Y. July 19, 2002) (Gleeson, J.) ("The Second Circuit has frequently rejected determinations that a person is not disabled based on minimal activities of daily life" where those activities are not engaged in on a sustained basis such as that required by sedentary employment); *Boyd v. Apfel*, 1999 U.S. Dist. LEXIS 18510, at *7 (E.D.N.Y. Oct. 15, 1999) (Nickerson, J.) (holding that a claimant's ability to engage in self-care and other domestic activities does not by itself contradict allegations of disability, as "it would be a shame to hold this endurance against [a claimant] in determining benefits unless his conduct truly showed that he is capable of working") (quoting *Balsamo*, 142 F.2d at 81). Here, there is no indication that any of the activities Plaintiff said he was able to undertake to care for himself and, previously, for his ailing father, were commensurate with performing sedentary work on a continuing and ongoing basis. Thus, it was error for the ALJ to place such a large emphasis on Plaintiff's ability to engage in basic daily activities in determining that his subjective complaints that his knee and neck pain prevented him from working were not credible.

The only other factor touched upon by the ALJ in weighing Plaintiff's subjective complaints of knee pain was the treatment received by Plaintiff. In his decision, the ALJ noted that he was "mindful that claimant's treating source stated in April 2003 that claimant was

scheduled for surgery of the knees." (Tr. 20.) As previously discussed, there is no evidence in the record that Plaintiff underwent this surgery (it was apparently postponed at least once) or that this surgery would heal Plaintiff's knee injuries and completely relieve his pain. Further, the ALJ noted in his summary of the evidence, but then ignored in his evaluation of Plaintiff's complaints of pain, Dr. Sosinsky's finding that Plaintiff's knee pain had been treated with non-steroid medications, which did little to relieve his symptoms. (Tr. 19-21.) This evidence should have been considered pursuant to the fourth factor listed above, which encompasses medication taken by a claimant to relieve pain.

With regard to Plaintiff's complaints of neck pain, the ALJ noted the MRI findings that revealed bulging discs of the cervical spine, but instead of analyzing this medical evidence under any of the seven factors, summarily concluded that "this would not preclude claimant from performing the demands of sedentary work." (Tr. 20-21.) There is no medical evidence in the record regarding the effects of the disc injury on Plaintiff's functioning, and it was error both for the ALJ to fail to develop the administrative record with respect to this impairment and to substitute his own judgment as to the effect of the impairment on Plaintiff's RFC. *See Williams v. Callahan*, 30 F. Supp. 2d 588, 595 (E.D.N.Y. Dec. 15, 1998) (Gershon, J.) ("An ALJ has an affirmative duty to develop the record.") (citing 20 C.F.R. § 404.1512); *Balsamo*, 142 F.3d at 81.

The cumulative error of failing to fully analyze Plaintiff's knee and neck injuries under the framework established by the SSA and of substituting his own opinion for that of a qualified medical professional as to the effect of Plaintiff's spinal disc injury on his ability to perform sedentary work provides an additional ground for remand.

b.     Evidence Regarding Obesity

Plaintiff argues that the ALJ did not adequately evaluate the extent to which his obesity exacerbated his other impairments in analyzing whether he was disabled. While obesity no longer has its own listing, it is still considered to be a "medically determinable impairment" and an ALJ must "consider its effects when evaluating disability." SSR 02-1p, 2000 WL 628049, at *1 (2002). The SSA has instructed that "in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or by a consultative examiner." *Id.* at *3. In this case, Dr. Aron, a physician who performed a consultative examination on Plaintiff on March 18, 2002, noted that Plaintiff is obese. (Tr. 90.) Thus, the ALJ should have considered Plaintiff's obesity as a medically determinable impairment potentially impacting his ability to perform sedentary work. *See Id.* at *6 ("An assessment should...be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time."); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 175 (S.D.N.Y. 2002) (remanding on other grounds but instructing the ALJ to question the claimant regarding her obesity and to consider its effects on her RFC). However, the ALJ's decision is silent on the issue of Plaintiff's obesity. Further, as in *Devora*, the ALJ did not fulfill his duty to develop the administrative record with regard to Plaintiff's obesity, as he began to question Plaintiff regarding his weight but then abruptly moved on to another topic, apparently assuming that the issue of obesity was inapposite because it was not severe enough in and of itself to lead to a finding of disability:

Q [ALJ]: ...Tell me what is restricting about your medical – how much do you weigh?
A [Plaintiff]: Roughly 270.

Q: And you're what 5'7", 5'8"?

A: About that, yes.

Q: So, I mean, that doesn't seem in itself a disabling condition to stop you from – do you take the subway? Public transportation?

A: If – usually when I go to medical appointments I get a friend to drive me.

D: Do you drive a car?

A: No sir, I have no license.

Q: But are you able to take public transportation?

A: If I have, you know, if I have money, yeah.

(Tr. 178.) On remand, the ALJ should develop the record as to Plaintiff's obesity and consider how the evidence of obesity interacts with Plaintiff's other impairments in determining whether Plaintiff is disabled.

        c.       Evidence Regarding Carpal Tunnel Syndrome

At the time of Plaintiff's administrative hearing before the ALJ, there was no medical evidence in the record indicating that Plaintiff suffered from carpal tunnel syndrome. However, following the hearing, an EMG confirmed the existence of "mild to moderate" carpal tunnel syndrome on both wrists. (Tr. 163-65.) As this Court finds that remand is required on other grounds, the ALJ is instructed to consider the evidence of Plaintiff's carpal tunnel syndrome in determining on remand whether Plaintiff is disabled.

III.  Conclusion

This case is remanded to the Social Security Administration for proceedings consistent with this opinion. On remand, the Commissioner should ensure that the ALJ (1) correctly applies the treating physician rule, including the required factors, to determine the weight to be accorded to the medical opinions of Plaintiff's treating physician and (2) follows the framework set forth in SSA regulations in considering the effects of Plaintiff's knee and neck injuries, his obesity, and his carpal tunnel syndrome on his RFC in determining whether he meets the disability requirements for SSI benefits.

**SO ORDERED.**

(SLT)

SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated:   July _15_, 2005
         Brooklyn, NY